# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:21-cv-00341-MR

| | |
|---|---|
| ADRIAN DOMINIC WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| K. GOODWIN, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of the *pro se* Complaint. [Doc. 1]. The Plaintiff is proceeding *in forma pauperis*. [Doc.8].

## I. BACKGROUND

The *pro se* Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Lanesboro and Bertie Correctional Institutions.[1] The Plaintiff names as Defendants: Kenneth E. Lassiter, the North Carolina Department of Public Safety ("NCDPS") director of prisons; Angela M. Dellaripa, an NCDPS grievance examiner; K. Goodwin and C. Smith, Lanesboro CI correctional officers; FNU Glover and FNU McLaughlin, Lanesboro CI sergeants; FNU Melton, a Bertie CI sergeant;

---

[1] The Plaintiff is presently incarcerated at the Scotland Correctional Institution.

Mashell L. Wilson, a Bertie CI assistant unit manager; and Sean T. Dillard, a Bertie CI employee. The Complaint addresses incidents that allegedly occurred at Lanesboro CI on June 15 and 16, 2018, and his subsequent grievance efforts at Lanesboro and Bertie CIs. The Plaintiff seeks declaratory judgment, preliminary and permanent injunctive relief, compensatory and punitive damages, a jury trial, costs, any additional relief the Court deems just, proper, and equitable. [Doc. 1 at 5, 17].

## II.  STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se

2

Case 3:21-cv-00341-MR   Document 10   Filed 01/26/22   Page 2 of 17

complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Excessive Force and Failure to Intervene

The Plaintiff appears to allege that Defendant Goodwin kicked or stomped, and pepper sprayed him [Doc. 1 at 5-6]; that Defendant Glover was present when Goodwin pepper sprayed the Plaintiff and failed to intervene [id. at 5-6]; and that Defendant Smith purposefully disrupted the Plaintiff's decontamination shower, pepper sprayed him again, and did not allow him to decontaminate or have a medical assessment [id. at 6-9].

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312,

3

319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights;

4

(2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., No. 2006-3465, 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); see also Jarvis v. Securitas Sec. Servs. USA, No. 11-cv-654, 2012 WL 527597 (D. Md. Feb. 16, 2012).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has stated an excessive force claim against Defendants Goodwin and Smith. However, the allegations are insufficient to state a claim against Defendant Glover for failure to intervene. The Plaintiff fails to plausibly allege that Defendant Glover knew that Goodwin's pepper spraying was unjustified, or that he had a reasonable opportunity to intervene and chose not to do so. Therefore, the Plaintiff's excessive force claim has passed initial review against Defendants Goodwin and Smith, but the claim for failure to intervene against Defendant Glover is dismissed without prejudice.

## B. Sexual Harassment

The Plaintiff alleges that Defendant Goodwin sexually harassed him by making lewd comments and "sexual advances,"[2] by repeatedly visiting his cell when he was wearing only boxers, and by ordering him to move things in his cell so she could watch him in his boxers. [Doc. 1 at 3, 5-6]. He further alleges that Defendant Smith made vulgar, lewd, and obscene comments while the Plaintiff was in a shower cell. [Id. at 8].

The Fourth Circuit has held that, "[a]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016) (quoting Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (internal quotation marks omitted)).

The Plaintiff's allegations describe only verbal sexual harassment. As such, the Plaintiff has failed to state a cognizable § 1983 claim against Defendants Goodwin and Smith for sexual harassment, and this claim is dismissed without prejudice.

---

[2] The Plaintiff does not describe the nature of the sexual advances, but he notes that he avoided making physical contact with Goodwin. [Doc. 1 at 3, 5].

6

C. Retaliation

The Plaintiff appears to allege that Defendant Goodwin ransacked his cell and pepper sprayed him in retaliation for rejecting her sexual advances, and to prevent him from reporting her misconduct. [Doc. 1 at 5-6]. He further alleges that Defendant Smith deprived him of a decontamination shower and pepper sprayed him in retaliation for disrespecting staff. [Id. at 7-9].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense

7

that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has stated a retaliation claim against Defendants Goodwin and Smith. This claim has passed initial review.

### D. Property Deprivation

The Plaintiff alleges that, when he returned to his cell after the incident with Defendant Smith, a large amount of property was missing. [Doc. 1 at 9]. Sergeant McLaughlin told the Plaintiff that some of his property was probably in storage; however, the Plaintiff never received an inventory form for the missing property. [Id. at 10]. The Plaintiff alleges that his property loss resulted from the violation of policy and procedure. [Id. at 14-15].

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). Where a state

8

employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984); see Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975) (under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner). The Parratt-Hudson doctrine does not apply, however, to deprivations that are a "result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).

The Plaintiff alleges that his property loss resulted from random, unauthorized acts rather than an established procedure. Adequate post-deprivation remedies exist for those losses, so there is no legal theory which would support a due process claim for these issues. Accordingly, the Plaintiff's claim for the loss of his property is dismissed without prejudice.

9

### E. Access to the Courts

The Plaintiff alleges that the lost property included some law books, "thus violating Plaintiff's rights to access the courts or litigation…." [Doc. 1 at 10-12, 14-16].

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), *aff'd*, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

The Plaintiff does not explain how the missing legal books prevented him from litigating a nonfrivolous challenge to his sentence or the conditions of his confinement. Accordingly, the Plaintiff's allegations are too vague and conclusory to state a claim, and this claim is dismissed without prejudice.

**F.  Religious Exercise**

The Plaintiff alleges that the lost property included religious books, head coverings, and a pendant, "thus violating Plaintiff's rights … to religious practice [and] … freedom of expression…." [Doc. 1 at 10-12, 14-16].

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief and that the official action or regulation substantially burdened his exercise of that belief. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Plaintiff's allegations are too vague and conclusory to state a claim that any Defendant violated his right to freely exercise his religion because he does not allege that he had a sincere religious belief, what such belief may be, or that the loss of his religious items substantially burdened his

ability to practice his religion. Accordingly, this claim is dismissed without prejudice.

### G. Grievances and Investigation

The Plaintiff alleges that Defendants Melton and Wilson refused to process his grievances [Doc. 1 at 15], and that Defendants Wilson, Dillard, Lassiter, and Dellaripa refused to properly investigate his grievances and grant him relief [id. at 16].

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams, 40 F.3d at 75. "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 885 F.3d 533, 541 (4th Cir. 2017). Nor does a prisoner have any right to an investigation. See generally DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); see, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim); Savage v. Cnty. of Stafford, Va., 754 F.Supp.2d 809 (E.D. Va. 2010) (deputy sheriff's alleged

12

failure to document and investigate arrestee's alibi did not violate due process); Wise v. Wilson, No. 1:15-cv-1705, 2017 WL 71656 (E.D. Va. Jan 6, 2017) (no constitutional right to have a PREA complaint investigated). As the Plaintiff had no constitutional right to engage in the grievance procedure or to have his allegations investigated, these claims are dismissed as frivolous and for failure to state a claim upon which relief can be granted.

### H. Policy Violations

The Plaintiff alleges that each of the Defendants violated prison policy and procedure. [Doc. 1 at 14-16].

The Plaintiff's allegation that the Defendants violated prison policy does not rise to the level of a § 1983 claim absent a plausible allegation of an underlying constitutional violation. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"). Therefore, the Plaintiff's claims for relief based solely on the allegations that the Defendants violated prison policy, standing alone, are dismissed for failure to state a claim upon which relief can be granted.

## I. Supervisory Liability

The Plaintiff appears to assert claims based on supervisory liability, alleging that Defendant Glover "refused to intervene and stop the actions of Defendant Goodwin in order to subject Plaintiff to excessive force; pain; suffering; sexual assault; anguish; and deprivation of legal, religious, academic, and personal property...." [Doc. 1 at 5, 14]. He further alleges that Defendants Melton, Wilson, Dillard, Lassiter, and Dellaripa permitted the violations of the Plaintiff's rights to continue after he filed grievances. [Id. at 15-16].

"It is well settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between her inaction and the constitutional injury." Shaw, 13 F.3d at 799 (internal quotation marks omitted).

The supervisory claim against Defendant Glover relates to Defendant Goodwin's alleged sexual harassment. Because the sexual harassment allegation fails to state a cognizable § 1983 claim, the supervisory liability claim against Defendant Glover likewise fails. See Section B, *supra.*

The supervisory claims against Defendants Melton, Wilson, Dillard, Lassiter, and Dellaripa seem to reiterate the Plaintiff's claim that those Defendants failed to adequately investigate and respond to his grievances. Because the investigation and grievances allegations fail to state a claim for relief, the Plaintiff's supervisory claim on the same grounds likewise fails. See Section G, *supra*. Moreover, to the extent that the Plaintiff alleges that these Defendants' actions or failure to act resulted in further violations of his rights, this is completely conclusory and unsupported by any allegations that further violations of his rights occurred, that these Defendants were deliberately indifferent or tacitly authorized such, or that there is a causal link between their actions/inactions and Plaintiff's injury. Accordingly, to the extent that the Plaintiff attempts to assert supervisory liability claims, they are dismissed without prejudice.

## IV. CONCLUSION

In sum, the Plaintiff's § 1983 claims for the use of excessive force and retaliation have passed initial review against Defendants Goodwin and Smith. The remaining claims are dismissed without prejudice.

The Court will allow the Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the matter will proceed only on the claims described in this Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The claims against Defendants Goodwin and Smith for the use of excessive force and retaliation have passed initial review.

2. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

3. The Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order. If the Plaintiff

16

Case 3:21-cv-00341-MR   Document 10   Filed 01/26/22   Page 16 of 17

fails to so amend his Complaint, the matter will proceed only on the claims as provided in this Order.

The Clerk of Court is respectfully instructed to mail the Plaintiff a blank § 1983 prisoner complaint form, an Opt-In/Opt-Out form pursuant to the Standing Order in Misc. Case No. 3:19-mc-00060-FDW, and a copy of this Order.

**IT IS SO ORDERED.**

Signed: January 26, 2022

Martin Reidinger
Chief United States District Judge