**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL CASE NO. 3:21-cv-00341-MR**

**ADRIAN DOMINIC WATKINS,**

**Plaintiff,**

**vs.**

**KATRINA GOODWIN, et al.,**

**Defendants.**

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** is before the Court on the Defendant Katrina Goodwin's Motion for Summary Judgment [Doc. 30].

## I. BACKGROUND

The incarcerated Plaintiff Adrian Dominic Watkins proceeding pro se, is serving a sentence of 32 years, 11 months, for second-degree murder (principal) in the North Carolina Department of Adult Corrections.[1] On July

[1] https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0579327&searchOffenderId=0579327&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed July 24, 2023<update>); see Fed. R. Evid. 201. The Plaintiff's address of record is at the Scotland Correctional Institution, but the North Carolina Department of Adult Corrections' website (NCDAC) indicates that he resides at the Caswell Correctional Center. The Plaintiff is reminded that it is "Plaintiff's responsibility to keep the Court advised of his/her address at all times" and that "[i]f the Plaintiff's address changes and no Notice is promptly filed with the Clerk of Court, this case may be dismissed for lack of prosecution." [Doc. 5: Order of Instructions at 2].

7, 2021,[2] the Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred while he was incarcerated at the Lanesboro Institution.[3] [See Doc. 1: Complaint]. The Plaintiff's Complaint[4] passed initial review against Defendant Katrina Goodwin ("Officer Goodwin")[5] for the use of excessive force and retaliation. [Doc. 10: Order on Initial Review]. The Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, a jury trial, costs, and any additional

---

[2] The date of prison staff's signature on the mailing envelope is used here [Doc. 1-1 at 2] because the Complaint was signed by the Plaintiff and acknowledged by a notary on different dates, and the Plaintiff does not indicate when he placed the Complaint in the prison's mail system. [See Doc. 1: Complaint at 17-18 (the Plaintiff purports to have signed the Complaint on June 8, 2021, but the Notary Acknowledgement is dated June 11, 2021)]; Houston v. Lack, 487 U.S. 266, 275 (1988) (Under the "Prison-Mailbox Rule," a prisoner's pleading is filed with the court as of the date that the prisoner placed the pleading in the prison system's outgoing mail to the court).

[3] The Plaintiff also made allegations about incidents at the Bertie Correctional Institution, but they failed initial review. [See Doc. 10: Order on Initial Review].

[4] Only the Attachment to the Complaint is signed under penalty of perjury. [Doc. 1: Compl. Attachment at 19-27]. The Complaint itself has a "Notary Acknowledgement," but it is not sworn or verified. [Doc. 1: Complaint at 18-19]. The Complaint thus does not serve as an affidavit. See generally N.C. Gen. Stat. § 10B-3(1) (defining an "Acknowledgement"); N.C. Gen. Sat. § 10B-41 (describing notarial certificate of acknowledgement); Pratt v. Allbritton, No. 4:16-cv-00198-BR, 2018 WL 4610151, at *7 (E.D.N.C. Aug. 8, 2018), *report and recommendation adopted*, No. 4:16-cv-198-BR, 2018 WL 4604522 (E.D.N.C. Sept. 21, 2018), *aff'd sub nom.* Pratt v. Albriton, 764 F. App'x 343 (4th Cir. 2019). Accordingly, only the verified Attachment to the Complaint will be considered in the summary judgment analysis. See generally Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) ("it is well established that a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge") (internal quotations omitted).

[5] The Complaint also passed initial review against Defendant Cohandan Francis Christian Smith, who was dismissed from this action for lack of service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. [See Doc. 28: Order].

relief the Court deems just, proper, and equitable. [Doc. 1: Complaint at 5, 17].

Defendant Goodwin filed the instant Motion for Summary Judgment. [Doc. 30: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 34: Roseboro Order]. The Plaintiff has not responded, and the time to do so has expired. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

Officer Goodwin was a correctional officer at Lanesboro on June 16, 2018 when she was conducting rounds. [Doc. 32-6: Goodwin Decl. at ¶ 3]. Officer Goodwin noticed that the Plaintiff had covered his cell window with

sheets, which is prohibited by Department policy due to safety concerns. [Doc. 32-6: Goodwin Decl. at ¶¶ 5-7; Doc. 32-7: Glover Decl. at ¶ 7]. The Plaintiff had 82 disciplinary violations at that time. [See Doc. 32-3: MSJ Ex at 1-3]. Officer Goodwin knocked on the Plaintiff's door and asked him to remove the blind from his window so that she could see him. [Doc. 32-6: Goodwin Decl. at ¶ 8, 10].

The Plaintiff was in bed, wearing only boxer shorts. Doc. 1: Compl. Attachment at 21]. The Plaintiff told Officer Goodwin to give him a chance to get up, but Officer Goodwin immediately started to "belligerently berate" him. The Plaintiff told Officer Goodwin that "she could stand there until she calmed down." [Id.].

The Plaintiff did not uncover his window. [Doc. 32-6: Goodwin Decl. at ¶ 9, 11]. Officer Goodwin knocked on the door again and asked him to remove the blind. [Id. at ¶ 11]. The Plaintiff said "Get away from his door" and that "[Goodwin] must want some problems." [Id. at ¶ 12]. Officer Goodwin radioed Sergeant Glover for assistance.[6] [Id. at ¶ 13; Doc. 32-7: Glover Decl. at ¶ 5]. When Sergeant Glover arrived, Officer Goodwin opened

[6] According to Officer Goodwin, she asked Sergeant Glover to assist with a cell search. [Doc. 32-6: Goodwin Decl. at ¶ 5]. According to the Plaintiff, Officer Goodwin told Sergeant Glover that the Plaintiff was "unresponsive," as though the Plaintiff were unconscious. [Doc. 1: Compl. Attachment at 21].

the Plaintiff's cell door and removed the sheet from his window. [Doc. 32-6: Goodwin Decl. at ¶ 14; Doc. 32-7: Glover Decl. at ¶ 8].

The Plaintiff got up off of the bed and told Officer Goodwin that "she was going to stop running in [his] cell and harassing [him] like she was crazy."[7] [Doc. 1: Compl. Attachment at 21]. Officer Goodwin told the Plaintiff to "cuff up"; when the Plaintiff asked Officer Goodwin why she wanted him to cuff up, she responded "to search [his] cell." [Id.]. The Plaintiff told Officer Goodwin that she did not come to his cell to search it, and she sprayed him with pepper spray. [Id..

The Plaintiff was placed in hand restraints and he was escorted to restrictive housing to be decontaminated in a shower. [Id.; Doc. 32-6: Goodwin Decl. at ¶ 17; Doc. 32-7: Glover Decl. at ¶ 13].

The Plaintiff asserts that Officer Goodwin "was just searching for a way to create a situation that would lead to a reason to spray [Plaintiff], confront him while [he] was almost naked or do [him] harm because [he] wouldn't respond to her raunchiness."[8] [Id. at 22].

---

[7] According to the Plaintiff, Officer Goodwin had entered his cell the previous day while the Plaintiff was only wearing boxer shorts, and stomped on his pinky toe while "speaking raunchily" to him. [Doc. 1: Compl. Attachment at 20].

[8] Officer Goodwin denies that she ever interacted with the Plaintiff prior to June 16, that she ever made sexual advances towards him, or that she used excessive force or retaliated against him. [Doc. 32-6: Goodwin Decl. at ¶¶ 18-20]. However, at this stage of the proceedings, the Court must accept the forecast of evidence presented by the

Officer Goodwin has filed video exhibits containing footage from the prison that show the following events:[9]

| | |
|---|---|
| 10:32:39 | Officer Goodwin is standing in the second-tier hallway outside the Plaintiff's cell [Id., Union B Dayroom[10]] |
| 10:32:45 | Sergeant Glover walks up the stairs to the second tier towards the Plaintiff's cell [Id., Union B Dayroom] |
| 10:33:22 | A male correctional officer runs into the dayroom and up the stairs to the second tier [Id., Union B Dayroom] |
| 10:34:03 | The Plaintiff, wearing boxer shorts, is escorted into the hallway and down the stairs from the second tier by Officer Goodwin and a male correctional officer [Id., Union B Dayroom] |
| 10:34:38 | The Plaintiff exits the dayroom, escorted by Officer Goodwin and the male correctional officer [Id., Union B Dayroom] |
| 10:34:43 | The escort continues [Id., Union Hallway ABC] |
| 10:35:05 | The escort continues [Id., Union Sallyport at elevator] |
| 10:35:24 | The escort continues; the Plaintiff, Goodwin, and male officer appear to be calm and uninjured [Doc. 33: Manually Filed Ex, Central to Union Hallway] |

Plaintiff as true.

[9] Only the incidents relevant to the excessive force and retaliation claims against Officer Goodwin are summarized here. The thumb drive contains eight video files which are partially overlapping. They have been consolidated and arranged by time stamp for ease of reference.

[10] The view of the Plaintiff's upper-tier cell door and the hallway outside his cell are partially obstructed by railings.

| | |
|---|---|
| 10:36:57 | The escort continues [Id., Hallway to Richmond] |
| 10:37:21 | The escort continues [Id., Lower Richmond Sallyport] |
| 10:37:35 | The escort continues [Id., Richmond Lower Hall to Seg] |
| 10:38:09 | The escort continues [Id., Richmond A Dayroom] |
| 10:38:26 | The Plaintiff is placed in a new cell [Id., Richmond A Dayroom] |
| 10:38:35 | Officer Goodwin exits the dayroom and returns to the Plaintiff's old cell [Id., Richmond A Dayroom] |
| 10:45:13 | Officer Goodwin and other officers remove bags and a mattress from the Plaintiff's old cell and place them on carts [Id., Union B Dayroom] |

## IV. DISCUSSION

### A. Statute of Limitations

The statute of limitations for § 1983 claims is borrowed from the applicable state's statute of limitations. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 66-67 (4th Cir. 2015). Section 1983 claims arising in North Carolina are limited by the three-year period for personal injury actions. See N.C.G.S. § 1–52; Nat'l Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1162 n. 2 (4th Cir. 1991). The limitations period for a § 1983 claim begins to run when the plaintiff has "a complete and present cause of action"—in other words, when it could have "file[d] suit and obtain[ed] relief." Wallace, 549 U.S. at 388

(quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)).

The Plaintiff filed the Complaint on July 7, 2021. [See Doc. 1-1 at 2; Note 2, *supra*]. The excessive force and retaliation incidents at issue allegedly occurred more than three years earlier on June 18, 2018. Accordingly, the Plaintiff's § 1983 claims are time-barred and Officer Goodwin's Motion for Summary Judgment on this ground is granted.

Even if this action were not time-barred, however, Officer Goodwin's Motion for Summary Judgment would be granted because, for the reasons discussed *infra*, the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact for trial.

**B. Official Capacity Claims**

The Plaintiff purports to sue Officer Goodwin, who is a state official, in her individual and official capacities. [Doc. 1: Complaint at 3]. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars

suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Officer Goodwin is granted summary judgment on the Plaintiff's claims against her in her official capacity.

### C. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to

preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

Here, the forecast of evidence construed in the light most favorable to the Plaintiff demonstrates that the Plaintiff's cell window was covered so that correctional officers could not see inside, which presented a safety concern. [Doc. 32-6: Goodwin Decl. at ¶ 7]. When Officer Goodwin directed the Plaintiff to uncover his window he did not comply. [Id. at ¶¶ 8-11]. Officer Goodwin entered the cell to uncover the window, at which time the Plaintiff argued with her and refused to cuff up. [Doc. 1: Compl. Attachment at 21]. Officer Goodwin then applied two one-half second bursts of pepper spray to the Plaintiff's face. [Doc. 32-6: Goodwin Decl. at ¶ 16]. The Plaintiff was immediately secured in handcuffs and escorted to a shower. [Id. at ¶ 17]. It was objectively reasonable for Officer Goodwin to apply this minimal use of force in light of the Plaintiff's repeated refusal to comply with her orders. The Plaintiff has not forecast any evidence that this use of force was

unreasonable, or that Officer Goodwin used pepper spray maliciously and sadistically rather than for a legitimate penological objective.

The Plaintiff's subjective beliefs that Sergeant Glover should have attempted to resolve the situation before Goodwin entered the cell, that Officer Goodwin should have used additional efforts to "control through communication" before resorting to force, and that Officer Goodwin should have used hands-on physical force rather than pepper spray, are of no legal significance.[11] [Doc. 1 at 21-22]; see, e.g., Kitchen v. Ickes, 116 F.Supp.613, 628-29 (D. Md. July 14, 2014). Accordingly, Officer Goodwin is entitled to summary judgment on the Plaintiff's excessive force claim.

**D. Retaliation**

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment

---

11 The Plaintiff's claims that Officer Goodwin violated prison policy were dismissed on initial review of the Complaint. [See Doc. 10: Order on Initial Review at 13-14].

activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). The same-decision test applies to determining the causation element of a prisoner's retaliation claim. Id. Once the prisoner-plaintiff shows that his "protected conduct was a substantial motivating factor in a prison guard's decision to take adverse action," the burden then shifts to the defendant to prove a permissible basis for taking that action. Id. at 300. Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Id.

The forecast of evidence in the light most favorable to the Plaintiff demonstrates that Officer Goodwin had entered his cell the day before the excessive force incident while the Plaintiff was only wearing boxer shorts, and spoke "raunchily" to him. [Doc. 1: Compl. Attachment at 20]. On June 16, the Plaintiff was only wearing boxer shorts when Officer Goodwin came

to his cell. [Id. at 22]. Officer Goodwin encountered the Plaintiff's covered cell window during rounds, which presented a safety concern [Doc. 32-6: Goodwin Decl. at ¶¶ 7-8]. The Plaintiff failed to uncover the window at Goodwin's request. [Id. at ¶¶ 8-10]. When Officer Goodwin entered the cell to uncover the window, the Plaintiff argued with her instead of complying with an order to cuff up. [Doc. 1: Compl. Attachment at 21]. Consequently, Officer Goodwin pepper sprayed him. [id.; Doc. 32-6: Goodwin Decl. at ¶¶ 16, 20-21].

The Plaintiff's bare and conclusory assertions that Defendant Goodwin wanted to see him undressed and/or wanted to pepper spray him because of an interaction that ostensibly happened the day before [Doc. 1: Compl. Attachment at 22] fails to raise a genuine issue as to whether any protected conduct was a substantial motivating factor in Officer Goodwin's decision to engage with him, enter his cell, and pepper spray him. Accordingly, Officer Goodwin is entitled to summary judgment on the Plaintiff's retaliation claim.

**E. Qualified Immunity**

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to

qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not forecasted evidence that the Defendant violated a constitutional right, Officer Goodwin is also entitled qualified immunity on Plaintiff's individual capacity claims. Defendant Goodwin is, therefore, entitled to summary judgment on this ground as well.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to mail a copy of this Order to the Plaintiff's address of record as well as to him at the Caswell Correctional Center and to terminate this action.

**IT IS SO ORDERED.**

Signed: August 31, 2023

Martin Reidinger
Chief United States District Judge